STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
LINDSEY GREER DOTSON (Cal. Bar No. 266973)
RUTH C. PINKEL (Cal. Bar No. 164770)
THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
  1500 United States Courthouse
  312 North Spring Street
  Los Angeles, California 90012
  Telephone:  (213) 894-4443/6077/8452
  Facsimile:  (213) 894-0141
  E-mail:  lindsey.dotson@usdoj.gov
      ruth.pinkel@usdoj.gov
      thomas.rybarczyk@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 2:21-00485-DSF-2 |
|    Plaintiff, | PLEA AGREEMENT FOR DEFENDANT MARILYN LOUISE FLYNN |
|      v. | |
| MARILYN LOUISE FLYNN, | |
|    Defendant. | |

  1. This constitutes the plea agreement between defendant MARILYN LOUISE FLYNN ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

///

///

///

1

### DEFENDANT'S OBLIGATIONS

2   2.   Defendant agrees to:

3       a.   At the earliest opportunity requested by the USAO and
4   provided by the Court, appear and plead guilty to count three of the
5   indictment in <u>United States v. Marilyn Louise Flynn</u>, CR No. 21-485-
6   DSF-2, which charges defendant with Federal Program Bribery in
7   violation of 18 U.S.C. § 666(a)(2).

8       b.   Not contest the Factual Basis agreed to in this
9   agreement.

10      c.   Abide by all agreements regarding sentencing contained
11  in this agreement.

12      d.   Appear for all court appearances, surrender as ordered
13  for service of sentence, obey all conditions of any bond, and obey
14  any other ongoing court order in this matter.

15      e.   Not commit any crime; however, offenses that would be
16  excluded for sentencing purposes under United States Sentencing
17  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
18  within the scope of this agreement.

19      f.   Be truthful at all times with the United States
20  Probation and Pretrial Services Office and the Court.

21      g.   Pay the applicable special assessment at or before the
22  time of sentencing unless defendant has demonstrated a lack of
23  ability to pay such assessment.

24      h.   Agree to pay a fine of no less than $100,000.

25              ### THE USAO'S OBLIGATIONS

26  3.   The USAO agrees to:

27      a.   Not contest the Factual Basis agreed to in this
28  agreement.

1          b.    Abide by all agreements regarding sentencing contained
2    in this agreement.

3          c.    At the time of sentencing, move to dismiss the
4    remaining counts of the indictment as against defendant.  Defendant
5    agrees, however, that at the time of sentencing the Court may
6    consider any dismissed charges in determining the applicable
7    Sentencing Guidelines range, the propriety and extent of any
8    departure from that range, and the sentence to be imposed.

9          d.    At the time of sentencing, provided that defendant
10   demonstrates an acceptance of responsibility for the offense up to
11   and including the time of sentencing, recommend a two-level reduction
12   in the applicable Sentencing Guidelines offense level, pursuant to
13   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
14   additional one-level reduction if available under that section.

15         e.    At the time of sentencing, based upon the factors
16   enumerated in 18 U.S.C. § 3553(a), recommend that the sentence
17   imposed by the Court be a probationary sentence that includes as a
18   condition that home confinement substitute for imprisonment.  There
19   is no agreement between the parties as to the appropriate term of
20   probation or home confinement.

21         f.    At the time of sentencing, recommend a fine of no more
22   than $150,000.

23                        <u>NATURE OF THE OFFENSE</u>

24   4.   Defendant understands that for defendant to be guilty of
25   the crime charged in count three, that is, Federal Program Bribery in
26   violation of 18 U.S.C. § 666(a)(2), the following must be true:

27

28

3

a.   Mark Ridley-Thomas was an agent of a State or local government, or any agency thereof -- here, the County of Los Angeles ("County");

b.   Defendant gave, offered, or agreed to give a person anything of value;

c.   Defendant acted corruptly, that is, intending to influence or reward Mark Ridley-Thomas in connection with any business, transaction, or series of transactions of the County involving anything of value of $5,000 or more; and

d.   The County received, in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

<u>PENALTIES</u>

5.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 666(a)(2) is: 10 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could

result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that defendant is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

8.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

///

///

///

FACTUAL BASIS

9.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this Factual Basis is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 11 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Background

From approximately 1997 to 2018, defendant was a tenured faculty member at the University of Southern California ("USC") and dean of the USC Suzanne Dworak-Peck School of Social Work ("Social Work School").  USC was a private research university located in the Second District of the County of Los Angeles ("County"), within the Central District of California.

Co-defendant MARK RIDLEY-THOMAS ("co-defendant RIDLEY-THOMAS") was a member of the Los Angeles County Board of Supervisors ("Board of Supervisors") for the Second District from approximately 2008 to 2020 and served as the Chairman of the Board of Supervisors in or around 2017.  The five-member Board of Supervisors was the governing body of the County and had executive, legislative, and quasi-judicial roles.  As a Supervisor, co-defendant RIDLEY-THOMAS was a high-level, elected public official and an agent of the County.

The County was a local government that received benefits in excess of $10,000 under a Federal program involving a grant,

contract, subsidy, loan, guarantee, insurance, and other forms of Federal assistance in both 2017 and 2018.

USC Telehealth Contract

In 2018, defendant was seeking an amendment to an existing contract between USC/the Social Work School and the Los Angeles County Department of Mental Health ("DMH") related to services provided by USC Telehealth ("Telehealth").  Telehealth was a clinic whereby Social Work School students provided online mental health and counseling services to patients referred by the County.  USC and the Social Work School received compensation in return for services rendered.

In April 2018, co-defendant RIDLEY-THOMAS was aware of defendant's desire to secure an amended Telehealth contract with DMH and the County.  Co-defendant RIDLEY-THOMAS also knew that defendant wanted a meeting with County Official 2, a high-level County public official, to facilitate and accelerate the necessary approvals for the amended Telehealth contract.

The $100,000 Payment

At co-defendant RIDLEY-THOMAS's request, defendant agreed to have USC serve as a conduit for a $100,000 payment from co-defendant RIDLEY-THOMAS's campaign account to the Social Work School and to then facilitate a nearly simultaneous $100,000 payment from USC to the United Ways of California ("United Ways") for the benefit of the Policy, Research & Practice Initiative ("PRPI").  PRPI was a new nonprofit initiative led by co-defendant RIDLEY-THOMAS's son, who had recently and abruptly resigned from his elected position in the California State Assembly.

1    Co-defendant RIDLEY-THOMAS requested defendant's help in
2    directing the $100,000 payment during a meeting on April 26, 2018.
3    During that meeting, co-defendant RIDLEY-THOMAS and defendant
4    discussed the $100,000 payment and PRPI as well as County business
5    that could benefit USC.  Both defendant and co-defendant RIDLEY-
6    THOMAS understood that defendant's assistance with the $100,000
7    payment would further secure co-defendant RIDLEY-THOMAS's support for
8    the amended Telehealth contract, especially by co-defendant RIDLEY-
9    THOMAS facilitating a meeting between defendant and County Official 2
10   for the purpose of having County Official 2 move forward
11   expeditiously with the amended Telehealth contract for USC/the Social
12   Work School.
13       On May 2, 2018, co-defendant RIDLEY-THOMAS caused a letter to be
14   delivered to defendant with a $100,000 check from his campaign
15   account made payable to the Social Work School.  Co-defendant RIDLEY-
16   THOMAS's letter read: "Please find enclosed tangible acknowledgement
17   of the important work of the Suzanne Dworak Peck School of Social
18   Work in Los Angeles and beyond.  As Dean, these funds can be used at
19   your discretion in order to best facilitate the impressive policy and
20   practical work of the School and its impact in the community."  Upon
21   receipt of these funds, both defendant and co-defendant RIDLEY-THOMAS
22   understood that defendant would facilitate an immediate $100,000
23   payment from USC to United Ways for the benefit of PRPI and co-
24   defendant RIDLEY-THOMAS's son.  Defendant and co-defendant RIDLEY-
25   THOMAS agreed that the $100,000 payment to USC from his campaign
26   account was to provide USC and defendant with funding to make a
27   $100,000 payment to United Ways for the benefit of PRPI and co-
28   defendant RIDLEY-THOMAS's son.

On May 3, 2018, co-defendant RIDLEY-THOMAS emailed defendant the bank wiring information for United Ways in order to facilitate the $100,000 payment from USC to United Ways.  Co-defendant RIDLEY-THOMAS told defendant that it was "necessary to act with dispatch" to facilitate USC's payment to United Ways "no later than May 15th" so that United Ways/PRPI would have the funds necessary to hire an employee ("Individual 1").

On May 4, 2018, co-defendant RIDLEY-THOMAS emailed defendant and asked her to contact a representative for United Ways to assure United Ways that defendant and USC had "begun the funds transfer," in other words, that USC was certain to make the $100,000 payment to United Ways.  Co-defendant RIDLEY-THOMAS sought to assure United Ways that funding for PRPI was in progress so that United Ways would permit PRPI and co-defendant RIDLEY-THOMAS's son to hire Individual 1.

On May 8, 2018, defendant emailed co-defendant RIDLEY-THOMAS to let him know that the $100,000 payment had been "cleared" and that the check to United Ways/PRPI would be "overnight mailed."  The $100,000 check from USC to United Ways/PRPI was then delivered via FedEx on or about May 11, 2018.

After defendant had informed co-defendant RIDLEY-THOMAS that everything had been "cleared" and the $100,000 to United Ways/PRPI was forthcoming, defendant met with County Official 2 on May 10, 2018 to discuss the amended Telehealth contract.  Co-defendant RIDLEY-THOMAS facilitated setting up this meeting.  On May 11, 2018, the day the $100,000 check was delivered to United Ways/PRPI, co-defendant RIDLEY-THOMAS emailed defendant to discuss County business -- in his

1 words, to talk about "master contract stuff" and "somehow use

2 yesterday's 'discussion' to advance it 😉 [winking face emoji]."

3     <u>The Concealment and Violation of USC Policy</u>

4     In order for their scheme to succeed, both defendant and co-

5 defendant RIDLEY-THOMAS concealed from USC that co-defendant RIDLEY-

6 THOMAS had directed a $100,000 payment to USC with the intent that

7 the funds be used to facilitate USC's nearly simultaneous $100,000

8 payment to United Ways/PRPI.  Had this fact been known to USC, USC

9 would not have approved the $100,000 payment to United Ways/PRPI.

10     Furthermore, in order for defendant to successfully direct the

11 $100,000 payment to United Ways/PRPI by the desired May 15, 2018

12 deadline set by co-defendant RIDLEY-THOMAS, defendant violated USC

13 Accounting Department policy and improperly used a vendor account at

14 USC to process the $100,000 payment.  Defendant's use of this vendor

15 account violated USC policy because, as defendant knew, United Ways

16 and PRPI were not vendors providing services to USC.  Defendant

17 improperly used a vendor account for the purpose of expediting the

18 $100,000 payment to ensure that the payment could be released from

19 the current fiscal year funds and to meet the May 15, 2018 payment

20 deadline set by co-defendant RIDLEY-THOMAS.  Had defendant's

21 violation of USC policy been known to USC, USC would not have

22 approved the $100,000 payment to United Ways/PRPI.

23 SENTENCING FACTORS

24     10.  Defendant understands that in determining defendant's

25 sentence the Court is required to calculate the applicable Sentencing

26 Guidelines range and to consider that range, possible departures

27 under the Sentencing Guidelines, and the other sentencing factors set

28 forth in 18 U.S.C. § 3553(a).  Defendant understands that the

Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

11.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 12 | [U.S.S.G. § 2C1.1(a)(2)] |
| *Specific Offense Characteristics* | | |
| -Offense Involving Elected Official | +4 | [U.S.S.G. § 2C1.1(b)(3)] |
| -Value of the Bribe | +8 | [U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(1)(E)] |

Subject to paragraph 23 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

12.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

13.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

11

1       b.   The right to a speedy and public trial by jury.

2       c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

       d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

       e.   The right to confront and cross-examine witnesses against defendant.

       f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

       g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

       h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

14.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that

the Factual Basis provided herein is insufficient to support defendant's plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

15. Defendant agrees that, provided the Court imposes (i) a term of probation or (ii) a total term of imprisonment on all counts of conviction of no more than 12 months and a day, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

16. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty

is unconstitutional, and any and all claims that the Factual Basis herein is insufficient to support defendant's plea of guilty.

17.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes either (i) a term of imprisonment of no less than one month or (ii) probation that contains a term of no less than 24 months of home confinement, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

18.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

19.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

1

<u>BREACH OF AGREEMENT</u>

2      20.   Defendant agrees that if defendant, at any time after the

3   signature of this agreement and execution of all required

4   certifications by defendant, defendant's counsel, and an Assistant

5   United States Attorney, knowingly violates or fails to perform any of

6   defendant's obligations under this agreement ("a breach"), the USAO

7   may declare this agreement breached.  All of defendant's obligations

8   are material, a single breach of this agreement is sufficient for the

9   USAO to declare a breach, and defendant shall not be deemed to have

10  cured a breach without the express agreement of the USAO in writing.

11  If the USAO declares this agreement breached, and the Court finds

12  such a breach to have occurred, then: (a) if defendant has previously

13  entered a guilty plea pursuant to this agreement, defendant will not

14  be able to withdraw the guilty plea, and (b) the USAO will be

15  relieved of all its obligations under this agreement.

16     21.   Following the Court's finding of a knowing breach of this

17  agreement by defendant, should the USAO choose to pursue any charge

18  that was either dismissed or not filed as a result of this agreement,

19  then:

20         a.   Defendant agrees that any applicable statute of

21  limitations is tolled between the date of defendant's signing of this

22  agreement and the filing commencing any such action.

23         b.   Defendant waives and gives up all defenses based on

24  the statute of limitations, any claim of pre-indictment delay, or any

25  speedy trial claim with respect to any such action, except to the

26  extent that such defenses existed as of the date of defendant's

27  signing this agreement.

28

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION
## AND PRETRIAL SERVICES OFFICE NOT PARTIES

22.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

23.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 11 are consistent with the facts of this case.  This paragraph permits both

the USAO and defendant to submit full and complete factual
information to the United States Probation and Pretrial Services
Office and the Court, even if that factual information may be viewed
as inconsistent with the Factual Basis or Sentencing Factors agreed
to in this agreement.

24.  Defendant understands that even if the Court ignores any
sentencing recommendation, finds facts or reaches conclusions
different from those agreed to, and/or imposes any sentence up to the
maximum established by statute, defendant cannot, for that reason,
withdraw defendant's guilty plea, and defendant will remain bound to
fulfill all defendant's obligations under this agreement.  Defendant
understands that no one -- not the prosecutor, defendant's attorney,
or the Court -- can make a binding prediction or promise regarding
the sentence defendant will receive, except that it will be within
the statutory maximum.

NO ADDITIONAL AGREEMENTS

25.  Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the USAO
and defendant or defendant's attorney, and that no additional
promise, understanding, or agreement may be entered into unless in a
writing signed by all parties or on the record in court.

///

///

///

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

26.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

STEPHANIE S. CHRISTENSEN
Acting United States Attorney

_____        September 15, 2022
LINDSEY GREER DOTSON                       _____
RUTH C. PINKEL                            Date
THOMAS F. RYBARCZYK
Assistant United States Attorneys


_____        _____
MARILYN LOUISE FLYNN                      Date
Defendant


_____        _____
BRIAN J. HENNIGAN                         Date
VICKI I. PODBERESKY
SAMANTHA S. SCHNIER
Attorneys for Defendant MARILYN LOUISE FLYNN

///

///

///

18

1    PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2        26.   The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF CALIFORNIA

7
     STEPHANIE S. CHRISTENSEN
8    Acting United States Attorney

9

10   _____        _____
     LINDSEY GREER DOTSON                      Date
     RUTH C. PINKEL
11   THOMAS F. RYBARCZYK
     Assistant United States Attorneys
12

13                                             9/15/2022
                                               _____
14   MARILYN LOUISE FLYNN                      Date
     Defendant
15                                             9/15/2022
                                               _____
16   BRIAN J. HENNIGAN                         Date
     VICKI I. PODBERESKY
17   SAMANTHA S. SCHNIER
     Attorneys for Defendant MARILYN LOUISE FLYNN
18

19   ///

20   ///

21   ///

22

23

24

25

26

27

28

                              18

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          9/15/2022
MARILYN LOUISE FLYNN                      Date
Defendant

///

///

///

19

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am defendant MARILYN LOUISE FLYNN's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the Factual Basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          9/15/2022
BRIAN J. HENNIGAN                          Date
VICKI I. PODBERESKY
SAMANTHA S. SCHNIER
Attorneys for Defendant MARILYN LOUISE FLYNN